UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE T. HARRIS,                              Case No. 15-10966

            Plaintiff,                         Judith E. Levy
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Stephanie Dawkins Davis
                                               United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 17)**

## I.      PROCEDURAL HISTORY

     A.      Proceedings in this Court

     On March 13, 2015, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Judith E.

Levy referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose

of reviewing the Commissioner's decision denying plaintiff's claim for benefits.

(Dkt. 3).  This matter was reassigned to the undersigned Magistrate Judge on

January 5, 2016, pursuant to Administrative Order.  (*See* Text-Only Order dated

January 5, 2016).  This matter is currently before the Court on cross-motions for

summary judgment.  (Dkt. 14, 17).

B.   Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income on April 3, 2012, alleging disability beginning that same date.  (Dkt. 9-3, Pg ID 112). Plaintiff's claim was initially disapproved by the Commissioner on August 14, 2012.  *Id*.  Plaintiff requested a hearing and on January 2, 2013, plaintiff appeared, along with his attorney, before Administrative Law Judge (ALJ) Jerome B. Blum, who considered the case *de novo*.  (Dkt. 9-2, Pg ID 78-98).  The ALJ issued an unfavorable decision on January 22, 2013.  (Dkt. 9-3, Pg ID 100-110).  Plaintiff filed a request for review with the Appeals Council, who, on April 22, 2013, remanded the matter back to the ALJ to examine several issues and take additional evidence.  (Dkt. 9-3, Pg ID 123-126).  After remand, the ALJ held a second hearing on October 30, 2013.  (Dkt. 9-2, Pg ID 53-77).  The ALJ issued a second decision denying plaintiff benefits on December 17, 2013.  (Dkt. 9-2, Pg ID 36-48).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on February 5, 2015,

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

denied plaintiff's request for review. (Dkt. 9-2, Pg ID 30-34); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1979 and was 32 years old on the date the application was filed. (Dkt. 9-2, Pg ID 47). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the application date. *Id*. At step two, the ALJ found that plaintiff's bulging disc and osteophyte in the cervical spine and minimal degenerative osteoarthritis in the cervical spine were "severe" within the meaning of the second sequential step. (Dkt. 9-2, Pg ID 41). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform sedentary work as follows:

After careful consideration of the entire record, the

3

> undersigned finds that the claimant has the residual
> functional capacity to perform unskilled sedentary work
> as defined in 20 CFR 416.968 and 20 CFR 416.967(a),
> respectively, except he must be afforded the opportunity
> to alternate between sitting and standing as needed. The
> claimant should also avoid all climbing and all overhead
> reaching.

(Dkt. 9-2, Pg ID 43).  At step four, the ALJ concluded that plaintiff had no past

relevant work.  (Dkt. 9-2, Pg ID 47).  At step five, the ALJ denied plaintiff

benefits because plaintiff could perform a significant number of jobs available in

the national economy.  (Dkt. 9-2, Pg ID 47-48).

   B.   Plaintiff's Claims of Error

   Plaintiff first asserts that the ALJ erred by failing to find his mental

impairments severe at step two.  Plaintiff contends that his depression symptoms

impact and adversely affect his ability to work.  According to plaintiff, his

symptoms and psychological limitations affects his ability to work in a

competitive work environment.  Plaintiff points out that the severity of his mental

limitations is supported by the opinion and assessment of Dr. Sean Prystash, a

psychiatrist at New Oakland, where plaintiff treated.  (Dkt. 9-7, Pg ID 334-337).

The record also contains treatment notes from New Oakland, which evidence

plaintiff's problems with completing tasks, concentrating, and difficulty dealing

with stress.  (Dkt. 9-7, Pg ID 297-315; Dkt. 9-7, Pg ID 338-353).

   Plaintiff maintains that the ALJ committed reversible error when he gave

the opinion of Dr. Prystash no weight whatsoever.  The ALJ's stated reasons were

that Dr. Prystash only evaluated plaintiff on one occasion, he provided no

substantive basis or narrative support for his opinions, and his opinions were not

supported by plaintiff's routine and apparent infrequent psychiatric treatment.

Plaintiff asserts that the ALJ substituted his own judgment in place of a trained

medical specialist.  Plaintiff also contends that even if Dr. Prystash's opinions

were not entitled to controlling weight, they were certainly entitled to some

weight.  Notably, Dr. Prystash's opinions were based on his personal observations

and examination of plaintiff and the records of plaintiff's treatment at New

Oakland, where he was employed.  Plaintiff also points out that there is no other

opinion in the record regarding plaintiff's mental limitations and no opinion

contradicting or rejecting Dr. Prystash's opinions.  Indeed, the Appeals Council

gave the ALJ an opportunity to obtain such an opinion and he declined to do so.

Based on Dr. Prystash's assessment and plaintiff's mental health treatment

records, plaintiff maintains that his depression was a severe impairment that

adversely affected his ability to perform basic work activity.

Next, plaintiff contends that the ALJ failed to properly assess plaintiff's

pain, limitations, and credibility.  According to plaintiff, the ALJ's conclusion that

the evidence of record fails to establish an impairment that would account for his

disabling symptoms and limitations is inaccurate and a distortion of the record.

C.      The Commissioner's Motion for Summary Judgment

According to the Commissioner, plaintiff's argument that the ALJ erred in finding that he did not have a severe mental impairment is unpersuasive for several reasons.  First, any error in the ALJ's failure to find a severe mental impairment is harmless because the ALJ found other severe impairments, continued through the sequential evaluation process, and considered all of plaintiff's impairments at the remaining steps.  *See Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) ("[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244 (6th Cir. 1987)).  Here, the ALJ found that plaintiff had severe physical impairments (Dkt. 9-2, Pg ID 41, at finding 2), continued through the sequential evaluation process, and, at the RFC state, found that Plaintiff mentally was limited to unskilled work (Dkt. 9-2, Pg ID 43, at finding 4).  Thus, the Commissioner maintains that any error at step two was harmless.  *See Nejat*, 359 Fed. Appx. at 577.

The Commissioner also argues that substantial evidence supports the ALJ's finding that plaintiff's PTSD and depression were not severe.  A severe impairment is one that significantly limits the ability to do basic work activities.

6

*Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009); 20 C.F.R. § 416.921(a). Basic mental work activities include understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.416.921(b)(3)-(6). The Commissioner points out that it was plaintiff's burden to prove that his alleged impairments were severe within this definition, *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Rabbers*, 582 F.3d at 652, and contends that plaintiff has not met that burden. As the ALJ explained (Dkt. 9-2, Pg ID 42), plaintiff received mental health treatment for just three months at the end of 2012. During his intake assessment at MCCMH in October 2012, plaintiff reported feeling depressed for about six months and was described as withdrawn with dysphoric mood, but the intake clinician noted no abnormalities in communication, perception, or thought process, and fair judgment, impulse control, and insight. (Dkt. 9-7, Pg ID 304-306). Plaintiff also failed to attend group therapy sessions at MCCMH. (Dkt. 9-7, Pg ID 338, 342, 350, 353). At a psychiatric evaluation at New Oakland, plaintiff was cooperative with no psychosis and intact insight and judgment. (Dkt. 9-7, Pg ID 348). Although plaintiff at times complained of panic and trouble concentrating (Dkt. 9-7, Pg ID 304, 347, 351), the Commissioner maintains that the ALJ properly found his subjective complaints not entirely credible and there is no objective evidence

supporting these complaints in his treatment notes.  (Dkt. 9-7, Pg ID 339, 343-44, 346, 351).  Indeed, by November 29, 2012, plaintiff reported that he was feeling better and performing community service.  (Dkt. 9-7, Pg ID 339).  Based on this record, the Commissioner contends that the ALJ reasonably found that plaintiff's mental impairments were not severe.

Contrary to plaintiff's argument, the Commissioner asserts that the ALJ properly gave no weight to Dr. Prystash's opinion that plaintiff's mental impairments were significantly limiting.  The ALJ explained that he gave no weight to this opinion because (1) Dr. Prystash evaluated plaintiff only once; (2) his notes from that visit did not support the limitations assessed; (3) Dr. Prystash checked boxes indicating limitations without giving any narrative explanation or substantive basis for his opinion; and (4) Dr. Prystash's opinion was inconsistent with the rest of plaintiff's treatment record, including infrequent psychiatric treatment.  (Dkt. 9-2, Pg ID 42).  According to the Commissioner, these were proper reasons to discount Dr. Prystash's opinion, and the record supports them. The ALJ also reasonably found that Dr. Prystash's examination notes – which described plaintiff as cooperative, without psychosis, and with intact insight and judgment (Dkt. 9-7, Pg ID 348) – were inconsistent with his opinion that plaintiff was limited in his abilities to work within a schedule, sustain a routine, make simple decisions, work with others, and ask simple questions.  (Dkt. 9-7, Pg ID

8

335-337).  *Gant v. Comm'r of Soc. Sec.*, 372 Fed. Appx. 582, 584 (6th Cir. 2010)
(holding that the ALJ properly rejected an opinion even from a treating source
where it was not supported by the source's own treatment notes).  The ALJ also
properly observed that Dr. Prystash's opinion consisted solely of checked boxes
on a form without any supporting explanation (Dkt. 9-7, Pg ID 335-337), and
further discounted the opinion on this basis.  *See Curler v. Comm'r of Soc. Sec.*,
561 Fed. Appx. 464, 471 (6th Cir. 2014) (upholding an ALJ's decision to reject
the opinion of a treating physician in part on this basis).  Finally, according to the
Commissioner, the record supports the ALJ's reasoning that Dr. Prystash's
opinion was inconsistent with plaintiff's medical record, including his very limited
psychiatric treatment.  For all these reasons, the Commissioner submits that
substantial evidence supports the ALJ's decision to give no weight to Dr.
Prystash's opinion.  *See Harris v. Comm'r of Soc. Sec.*, 2014 WL 793612, at *10
(E.D. Mich. Feb. 27, 2014) (holding that an ALJ properly rejected an opinion
based on a single examination that was not supported by the doctor's own
examination findings and was inconsistent with the record as a whole).

Similarly, the Commissioner asserts that the ALJ also reasonably gave no
weight to Dr. Prystash's assessment of a GAF score of 55 because that score was
merely a subjective snapshot of a single moment in time based on a one-time visit
and was not a rating of plaintiff's ability to work.  (Dkt. 9-2, Pg ID 42).  This

Court and the Sixth Circuit have regularly upheld this reasoning. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (quoting *Edwards v. Barnhart*, 383 F. Supp. 920, 924 n.1 (E.D. Mich. 2005) (describing a GAF score as "a subjective determination"))); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."); *Jordan v. Comm'r of Soc. Sec.*, 2011 WL 891198, at *5 (E.D. Mich. Jan. 14, 2011) (describing GAF scores as "subjective opinions, representing a snapshot of a person's level of functioning at a given moment in time, not a rating of their ability to work"), *aff'd*, 2011 WL 891240 (E.D. Mich. Mar. 11, 2011).

According to the Commissioner, plaintiff's argument that Dr. Prystash was the only physician to give an opinion on his mental functioning does not undermine the step two finding because it was plaintiff's burden to prove that his alleged impairments were severe, not the ALJ's burden to call an expert to prove that his impairments were not severe. Because plaintiff has not pointed to any evidence undermining the ALJ's reasoning that his mental impairments did not significantly limit his ability to perform basic work activities, or the decision to give little weight to Dr. Prystash's opinion and GAF score, he has not met that burden. And again, the Commissioner asserts that even if the ALJ had erred, any error at step two would be harmless because the ALJ considered plaintiff's

10

non-severe mental impairments throughout the sequential evaluation.

According to the Commissioner, plaintiff's challenges to the ALJ's assessment of his credibility are equally unavailing because substantial evidence supports the ALJ's finding.  The ALJ explained that he found plaintiff's subjective complaints not entirely credible because: (1) there was no evidence that plaintiff experienced an exacerbation of his symptoms at the time he alleged he became disabled (Dkt. 9-2, Pg ID 44); (2) the objective medical evidence of record did not support plaintiff's allegations of physical disability (Dkt. 9-2, Pg ID 44-45); (3) plaintiff consistently declined injection therapy to treat his allegedly disabling pain (Dkt. 9-2, Pg ID 45); (4) plaintiff had only a sporadic work history prior to alleging disability (Dkt. 9-2, Pg ID 46); and (5) the medical record did not corroborate plaintiff's allegations of side effects from medication.  (Dkt. 9-2, Pg ID 46).  The Sixth Circuit has made clear that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531.  This Court may not disturb the ALJ's credibility finding "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Here, the Commissioner argues that plaintiff has failed to show such compelling reason.

More specifically, the Commissioner asserts that the ALJ properly

considered the fact that there was no evidence of an exacerbation of plaintiff's impairments at the time he alleged he became disabled. Plaintiff argues that the relevant inquiry was whether he was disabled beginning on his application date in April 2012. Although this is true, it does not undermine the ALJ's reasoning that plaintiff's allegation of disability beginning in 2008 (Dkt. 9-3, Pg ID 100) was inconsistent with the record, and the ALJ was entitled to discount plaintiff's credibility based in part on this inconsistency. *See* Social Security Ruling ("SSR") 96-7p, 1997 WL 374186, at *5 (July 2, 1996) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). Second, the ALJ properly considered the fact that the objective medical evidence did not support plaintiff's allegations of disability. See 20 C.F.R. § 416.929(c)(2) (describing objective medical evidence as "a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work"). As the ALJ noted, plaintiff's testimony that he had low back pain (Dkt. 9-2, Pg ID 57) was inconsistent with a normal x-ray of the lumbar spine in July 2013. (Dkt. 9-7, Pg ID 356). Regarding his neck impairment, in February and March 2012, plaintiff's physical examinations were normal. (Dkt. 9-7, Pg ID 277, 282). In April 2012, plaintiff showed full range of motion and only mild

12

tenderness (Dkt. 9-7, Pg ID 288), and in August 2012, he showed full range of motion with no abnormalities noted.  (Dkt. 9-7, Pg ID 289).  Thus, according to the Commissioner, the ALJ reasonably found that this record was inconsistent with plaintiff's allegations of disability.

Plaintiff points out that a September 2011 CT scan showed a disc bulge in his cervical spine; however, the ALJ acknowledged that this was a severe impairment (Dkt. 9-2, Pg ID 41, at finding 2), and the CT scan says nothing about resulting limitations.  (Dkt. 9-7, Pg ID 273-274).  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining that a "mere diagnosis . . . says nothing about the severity of the condition").  Plaintiff also points to Dr. Qadir's consultative examination report, which cited plaintiff's complaints, medications, and the CT scan.  The Commissioner points out, however, that plaintiff does not argue any error in the ALJ's consideration of this report, or show how this report undermined the credibility analysis.

Plaintiff also points to Dr. Murskyj's opinion that he could perform less than sedentary work.  The ALJ rejected Dr. Murskyj's opinion because it was not supported by the objective medical evidence, including Dr. Murskyj's own treatment notes, and because Dr. Murskyj appeared to rely heavily on plaintiff's subjective complaints.  Plaintiff does not contest that these are proper reasons to reject this opinion.  *See e.g.*, *Nabours v. Comm'r of Soc. Sec.*, 50 Fed. Appx. 272,

13

276 (6th Cir. 2002) (explaining that a treating physician's opinion may be rejected "if inconsistent with other substantial evidence"); *Bruce v. Comm'r of Soc. Sec.*, 2011 WL 833792, at *3 (E.D. Mich. Mar. 4, 2011) ("[A]n ALJ may reject the opinion of a treating physician where it is . . . contradicted by substantial medical evidence."). According to the Commissioner, plaintiff's unsupported argument that Dr. Murzkyj's opinion was supported by the CT scan and "office examinations" does not undermine the ALJ's analysis. As explained above, the CT scan alone says nothing about the severity of plaintiff's cervical spine impairment, *see Higgs*, 880 F.2d at 863 (explaining that a diagnosis of arthritis based on x-rays "sa[id] nothing about the severity of the condition"), and plaintiff's treatment notes regularly showed normal examination findings (Dkt. 9-7, Pg ID 277, 282, 288-89), which the ALJ reasonably found inconsistent with Dr. Murskyj's opinion. Plaintiff's citation to his own statements in his function report does not show any error in the ALJ's finding that plaintiff's statements were not entirely credible. Third, the Commissioner also asserts that the ALJ properly found plaintiff not entirely credible because he consistently declined recommended injections to treat his allegedly disabling pain. (Dkt. 9-2, Pg ID 45, 63; Dkt. 9-7 Pg ID 288-89, 367); *see Harbin ex rel. Sarver v. Comm'r of Soc. Sec.*, 2013 WL 4604376, at *18 (E.D. Mich. Aug. 29, 2013) (finding that "the ALJ properly considered whether plaintiff followed prescribed treatment

14

recommendations from his treating physicians" in assessing credibility).  Fourth,

the ALJ "also reasonably discounted [plaintiff]'s credibility because of h[is]

sporadic work history" prior to his alleged disability.  (Dkt. 9-2, Pg ID 46; Dkt. 9-

3, Pg ID 105-106; Dkt. 9-6, Pg ID 245); *see Robinson v. Comm'r of Soc. Sec.*,

2014 WL 4145339, at *8 (E.D. Mich. Aug. 20, 2014).  Finally, the ALJ also

properly considered the fact that the medical record did not corroborate plaintiff's

allegations of side effects from medications.  Plaintiff testified that his

medications made him drowsy (Dkt. 9-2, Pg ID 62), but medical records either do

not mention side effects or indicate that plaintiff denied side effects.  (Dkt. 9-6, Pg

ID 284, 286).  The ALJ properly cited this inconsistency in plaintiff's complaints,

*see* SSR 96-7p, 1997 WL 374186, at *5, which plaintiff has not challenged.

According to the Commissioner, plaintiff's argument that the ALJ

erroneously discounted his credibility because his allegedly limited activities of

daily living could not be objectively verified is unavailing.  The Commissioner

contends that the ALJ did not cite plaintiff's daily activities as a reason to discount

his credibility; rather, he explained that he found plaintiff not entirely credible

despite the fact that he alleged limited daily activities.  (Dkt. 9-2, Pg ID 46).  The

ALJ explained that, where plaintiff's allegedly limited daily activities could not be

objectively verified and could have been attributable to factors other than

plaintiff's limitations, he found plaintiff not entirely credible given the objective

medical evidence and other inconsistencies in the record.  (Dkt. 9-2, Pg ID 46).

The Commissioner next asserts that plaintiff's argument that he did not have medical insurance until 2012 also does not show any error in the ALJ's credibility analysis.  Plaintiff testified at the hearing that he had had Medicaid for about a year (Dkt. 9-2, Pg ID 60), but he did not testify whether he had insurance before Medicaid.  (Dkt. 9-2, Pg ID 60-61).  Indeed, in August 2012 – four months into the relevant period – plaintiff told Dr. Moosavi that his insurance would not cover physical therapy.  (Dkt. 9-7, Pg ID 289).  Even if plaintiff did not have insurance, the Commissioner maintains that there was no error.  The ALJ found plaintiff not entirely credible not because there was no medical evidence in the record, but because there was medical evidence and it did not support plaintiff's allegations. (Dkt. 9-2, Pg ID 44).  And although the ALJ cited plaintiff's failure to follow through with recommended injections as one reason to discount his credibility (Dkt. 9-2, Pg ID 45), plaintiff told Dr. Moosavi and Dr. Nabity that he was "against" or " not interested" in injections (Dkt. 9-7, Pg ID 289, 368), and testified that he was "scared" of injections (Dkt. 9-2, Pg ID 63), not that he could not get them due to lack of insurance.  Thus, the Commissioner contends that there was no error in the ALJ's failure to consider plaintiff's alleged lack of insurance in assessing credibility.  For these reasons, the Commissioner urges the Court to conclude that substantial evidence supports the ALJ's credibility finding, and

16

there was no error in the ALJ's consideration of plaintiff's allegedly limited daily activities or treatment history.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

17

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

19

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

        1.    Step Two/mental impairment

Plaintiff argues that the ALJ failed to properly find his mental impairments to be severe at step two. At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled."). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was "disabled" as defined by the Act...." *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007). A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most

23

jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).  Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. *See id.*

It is well established in Sixth Circuit precedent that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  The purpose of step two is "to screen out totally groundless claims."  *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576 (6th Cir. 2009).  If the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere.  *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks

24

omitted); *Jackson v. Astrue*, 734 F.Supp.2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

In this case, regardless of whether any error the ALJ may have committed at step two was harmless, the undersigned concludes that the ALJ erred by failing to obtain a medical opinion to support his conclusions regarding plaintiff's mental impairments and any resulting limitations.  In this case, the ALJ rejected the only medical opinion in the record on this issue and did not obtain any other opinion. Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.").  In other words, "[w]hile an ALJ is free to resolve

25

issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and have cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not

26

free to set his own expertise against that of a physician who presents competent

evidence."). As the *Deskin* court explained:

> An ALJ is not qualified to assess a claimant's RFC on
> the basis of bare medical findings, and as a result an
> ALJ's determination of RFC without a medical advisor's
> assessment is not supported by substantial evidence.
> Where the "medical findings in the record merely
> diagnose [the] claimant's exertional impairments and do
> not relate these diagnoses to specific residual functional
> capabilities such as those set out in 20 C.F.R.
> § 404.1567(a) ... [the Commissioner may not] make the
> connection himself."

*Deskin*, 605 F.Supp.2d at 912, quoting *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 311

(D. Mass. 1998) (internal citation omitted)[2]; *see also Mitsoff v. Comm'r of Soc.*

*Sec.*, 2013 WL 1098188, *8 (S.D. Ohio 2013) (collecting cases).

There are limited occasions when the medical evidence is so clear, and so

undisputed, that an ALJ would be justified in drawing functional capacity

conclusions from such evidence without the assistance of a current medical source.

*Mitsoff*, 2013 WL 1098188, *9, citing *Deskin*, 605 F.Supp.2d at 912 ("To be sure,

where the medical evidence shows relatively little physical impairment, an ALJ

permissibly can render a commonsense judgment about functional capacity even

---

[2] "Properly understood, *Deskin* sets out a narrow rule that does not constitute a bright-line test." *Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 at *2 (N.D. Ohio 2011). Rather, *Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence. *Id.* In this case, the ALJ made an RFC determination without any medical source opinion regarding plaintiff's mental limitations.

without a physician's assessment"). This does not appear to be such a case. Under these circumstances, an expert medical advisor is absolutely critical to properly evaluate plaintiff's impairments, symptoms, and functional limitations. Thus, the undersigned concludes that this matter should be remanded so that the ALJ can obtain the opinion of an expert medical advisor regarding plaintiff's mental impairments and any resulting functional limitations. In this vein, plaintiff's credibility regarding his mental limitations will also need to be reassessed on remand.

### 2.      Treating physician opinion

Plaintiff claims that the ALJ discounted the opinion of his treating physician, Dr. Murksyj, regarding the disabling nature of his limitations. An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "non-examining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "non-treating source"). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted).

An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any. 20 C.F.R. § 404.1527; *see Shelman v. Heckler*,

821 F.2d 316, 321 (6th Cir. 1987). The Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant. *See Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir. 1983). Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)). An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that doctor is supported by the medical evidence. *See Simpson*, 344 Fed. Appx. at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011). This is so even though the final responsibility for the RFC

29

determination is an issue reserved to the Commissioner.  *Allen*, 2013 WL 5676254, at *15.

Plaintiff's treating physician, Dr. Murskyj, opined plaintiff's symptoms were severe enough to interfere with his attention and concentration required to perform work-related tasks on a frequent basis, that he required breaks in excess of typical breaks permitted in a work day, that he could only sit two hours in an eight hour work day and stand/walk two hours in an eight hour workday, that he would require breaks every 1.5 hours for 20 minutes in duration, that he would be absent three or four times per month and that he was not physically capable of working eight hours per day, five days per week.  (Dkt. 9-7, Pg ID 280-281).   The ALJ concluded that Dr. Murskyj's opinions could not be given controlling weight for the following reasons:

> In this instance, Dr. Murskyj's opinions cannot be accorded controlling weight because they are not supported by objective diagnostic evidence and are inconsistent with other significant clinical findings and the claimant's reported activities of daily living. A CT scan showed some retained bullet fragments from an old gunshot wound and a mild to moderate disc bulge at C6-C7 with no signs of canal stenosis or nerve root encroachment. There is no indication that a cervical MRI or an upper extremity EMG has been performed.

(Dkt. 9-3, Pg ID 117).

The undesigned concludes that the ALJ failed to give the requisite "good

reasons" when he discounted the RFC assessment of plaintiff's treating physician.
As the Sixth Circuit stated: "This requirement [to always give good reasons] is not
simply a formality; it is to safeguard the claimant's procedural rights. It is intended
to let claimants understand the disposition of their cases, particularly in situations
where a claimant knows that his physician has deemed him disabled and therefore
might be especially bewildered when told by an administrative bureaucracy that [ ]
he is not." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted).
Moreover, if the ALJ determined that plaintiff's treating physician's opinion
should not be given controlling weight despite the medical evidence in support,
"the ALJ must still determine how much weight is appropriate by considering a
number of factors, including the length of the treatment relationship,
supportability of the opinion, consistency of the opinion with the record as a
whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc.
Sec.,* 582 F.3d 399, 406 (6th Cir. 2009). This was not done either. Even if Dr.
Murskyj's opinion was not entitled to controlling weight, it was entitled to
deference. 20 C.F.R. § 404.1527(d)(2)(I). As explained in SSR 96-2p,
adjudicators must remember that a finding that a treating source medical opinion is
not well-supported by medically acceptable clinical and laboratory diagnostic
techniques or is inconsistent with the other substantial evidence in the case record
means only that the opinion is not entitled to controlling weight not that the

opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The undersigned finds that the ALJ did not adequately address why Dr. Murskyj's opinion should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2). Here, the ALJ simply said he was not giving the opinion controlling weight, but he did not explain what weight, if any, was given to Dr. Murskyj's opinions. Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails to explain why he rejected or discounted the opinion and how those reasons affected the weight accorded the opinion, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citation omitted). Given that Dr. Murskyj's opinion must be reevaluated on remand, the ALJ must also reassess plaintiff's credibility as to his physical limitations.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 2, 2016                              s/Stephanie Dawkins Davis
                                                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on March 2, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                                 s/Tammy Hallwood
                                                 Tammy Hallwood
                                                 Case Manager
                                                 (810) 341-7887
                                                 tammy_hallwood@mied.uscourts.gov