# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

George T. Harris,

                Plaintiff,      Case No. 15-cv-10966
                                        Hon. Judith E. Levy

v.                                       Mag. Judge Stephanie Dawkins Davis

Carolyn W. Colvin, Acting
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION [18]

Plaintiff George Harris brings this action pursuant to section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Act. The case was referred to Magistrate Judge Stephanie Dawkins Davis, who on March 2, 2016, recommended that the matter be remanded to the Commissioner. (Dkt. 18.)

Defendant timely filed objections to the Report and Recommendation ("R&R") (Dkt. 19), and plaintiff filed a response. (Dkt. 20.) For the reasons stated below, the Court **ADOPTS** the recommendation of the Magistrate Judge and **REMANDS** this matter for further proceedings.

I.  PROCEDURAL BACKGROUND

Plaintiff filed a claim for supplemental security income ("SSI") on April 10, 2012, alleging disability beginning that same date. (Record ("R"), Dkt. 9 *et seq.*, at 168.) On August 13, 2012, plaintiff's claim was initially denied. (*Id.* at 70-77.) Plaintiff requested a hearing and on January 2, 2013, plaintiff appeared with his attorney before Administrative Law Judge ("ALJ") Jerome B. Blum. (*Id.* at 49.) On January 22, 2013, the ALJ found plaintiff not to be disabled under the Act. (*Id.* at 79-89.) On February 25, 2013, plaintiff filed a request for review with the Appeals Council, and on April 22, 2013, the Appeals Council remanded the matter back to the ALJ to examine several issues and take additional evidence. (*Id.* at 93-96.) On October 30, 2013, the ALJ held a second hearing to address the flaws identified by the Appeals Council, (*id.* at 24-48), and on December 17, 2013, issued a

decision denying plaintiff SSI benefits. (*Id.* at 7-19.) Plaintiff again sought review of the ALJ's determination, and on February 5, 2015, the Appeals Council denied plaintiff's request for review, thus making the denial of benefits the final decision of the Commissioner. (*Id.* at 1-5.) Plaintiff timely filed this action for judicial review of the Commissioner's decision. (Dkt. 1.)

The Court incorporates the facts as articulated in the Report and Recommendation. (*See* Dkt. 18.) The Court includes any specific facts upon which it relies in analyzing the parties' arguments in its discussion of defendant's objection.

## II. STANDARD OF REVIEW

In cases where a magistrate judge has submitted an R&R and a party has properly filed objections to it, the district court must conduct a *de novo* review of those parts of the R&R to which the party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. *Id.* Judicial review of the Commissioner's final decision is limited to determining whether there is substantial evidence supporting the ALJ's decision and whether the judge applied the correct

legal standards in reaching that decision. *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If the Commissioner's decision is supported by substantial evidence, [the Court] must defer to that decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

When determining whether the decision is supported by substantial evidence, the reviewing court must take into consideration the entire record, including "'whatever in the record fairly detracts from its weight.'" *Mullen v. Bowen*, 800 F.2d 535, 545-46 (6th Cir. 1986) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1971)). However, the court may not review the evidence *de novo*, make

determinations of credibility, or weigh the evidence. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927 (6th Cir. 1983)).

### III. ANALYSIS

Defendant objects to the R&R for two reasons. First, defendant challenges the recommendation to remand on the basis that substantial evidence did not support the ALJ's finding that plaintiff could mentally do unskilled work. (Dkt. 19 at 2-5.) Second, defendant contests that the Magistrate Judge erred in finding that the ALJ did not adequately explain the weight given to the opinion of plaintiff's treating physician, Dr. Murskyj. (*Id.* at 6-10.)

### A. Commissioner's Determination that Plaintiff Possessed the Mental Residual Functional Capacity for Unskilled Work is not Supported by Substantial Evidence

The ALJ erred by making a determination regarding the severity of plaintiff's mental health condition and his residual functional capacity without the opinion evidence of an acceptable medical source. Determinations of medical impairments and medical opinions must be

established by an acceptable medical source, which is defined as licensed physicians. SSR 06-03p.

The regulations governing SSI mandate a five-step sequential process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a). If the ALJ finds that a claimant is disabled at one step, then he makes his determination and does not go on to the next step. *Id.* If he cannot make that determination, he must proceed to the next step. *Id.*

At step two of the sequential evaluation, the ALJ must consider whether a claimant has a severe impairment and whether the impairment meets the twelve month duration requirement in 20 C.F.R. § 416.909. A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Failure to find a severe impairment at step two is not reversible error, as long as the ALJ found at least one severe impairment, and, in the remaining steps, considers all of a claimant's impairments. *Fisk v. Astrue*, 253 F. App'x. 580, 583 (6th Cir. 2007) (discussing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

The Sixth Circuit has consistently followed the holding in *Fisk*. *See, e.g. Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013).

In the present case, the ALJ did not address plaintiff's mental impairments at step two. (R. 12.) However, at step three, the ALJ addressed plaintiff's mental impairments as well as his headaches and lower back pain. (*Id.* at 12-14.) The ALJ found that plaintiff's depression and post-traumatic stress disorder ("PTSD") "do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (*Id.* at 12-13.) This finding relied upon records from Macomb County Community Mental Health ("MCCMH"), which documented plaintiff's reports of "feeling depressed, isolating, and experiencing intermittent panic attacks," as well as a mental status examination showing that plaintiff was "mildly guarded with constricted affect, but was cooperative and displayed intact insight and judgment." (*Id.*) This finding was further supported by MCCMH documentation showing that plaintiff no-call/no-showed for multiple treatment sessions, and at the sessions he did attend, he reported that he was feeling better, performing community service, and attending Alcoholics Anonymous meetings. (*Id.*)

7

Additionally, the ALJ noted that plaintiff had not received treatment after late in 2012, which he found to undermine the credibility of the allegations regarding the severity of his psychiatric symptoms. (*Id*.)

In making his determination, the ALJ gave no weight to the opinion of Dr. Prystash, the physician who performed a psychiatric evaluation of plaintiff on November 19, 2012, for the following reasons: 1) Dr. Prystash only evaluated plaintiff on one occasion, and the report from that evaluation does not support the opinion he provided on plaintiff's limitations, 2) Dr. Prsytash only checked off boxes on the opinion form and did not provide any substantive comments in support of the boxes he checked, and 3) plaintiff's infrequent psychiatric treatment undermined the validity of Dr. Prystash's opinion that he had slight limitations in understanding and memory, moderate limitations in sustained concentration and persistence, and marked limitations in the area of social interaction. (R. 13 (summarizing Medical Source Statement at *id*. 301-03).)[1]

---

[1] The ALJ indicates that this examination took place in late October 2012 (R.13), but the report is dated in the doctor's handwriting as November 19, 2012. (*Id*. at 301-03.)

8

Despite having given no weight to Dr. Prystash's opinion, the ALJ considered the Global Assessment Functioning score of 55 that Dr. Prystash assigned to plaintiff "as generally representative of moderate symptoms or moderate difficulty in social or occupational functioning." (R. 13.)[2] The ALJ nonetheless gave this evaluation no weight, because it "represents a snapshot of [plaintiff's] perceived abilities at a particular moment in time," and is "merely a subjective opinion not based upon objective medical findings." (*Id.*) The Sixth Circuit has stated that "while a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy," and therefore, "the ALJ's failure to reference the GAF score in the RFC . . . does not make the RFC inaccurate." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Furthermore, the Commissioner has not endorsed the use of the GAF in Social Security and SSI disability programs and has maintained that "[i]t does not have a direct correlation to the severity requirements" of the mental disorders listings. 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). Accordingly, the

---

[2] The Global Assessment of Functioning Scale (GAF) is designed to measure a patient's ability to function. A clinician rates the patient on a scale of 1 to 100. A score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning, while scores below 50 indicate serious impairments. 2 Attorneys Medical Deskbook § 18:10; DSM-IV, p. 34.

9

ALJ did not err by assigning no weight to the GAF score. *See DeBoard v. Comm'r of Social Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (discussing cases & 65 Fed. Reg. at 50764-65).

However, the ALJ committed an error necessitating remand when he first determined that Dr. Pryztash's opinion should be given no weight, but then proceeded to evaluate plaintiff's "paragraph B" criteria—that is, the four broad functional areas set out in the SSA regulations for examining mental disorders. 20 C.F.R., Part 404, Subpart P, Appendix 1. (R. 14.) At this point in his evaluation, he had no acceptable medical-source evidence on which to base any further evaluation of plaintiff's mental health status: he had assigned no weight to Dr. Prystash's opinion and to the GAF score, and the treatment notes from the MCCMH limited license psychologist could not be used to establish the existence of a medically determinable impairment. SSR 06-03p (defining sources who are not "acceptable medical sources" as social workers and therapists, and explaining only "acceptable medical sources" can establish a medically determinable impairment, provide medical opinions, and be considered "treating sources"). *See also* 20 C.F.R. §§ 416.913(a), 416.927(a)(2), 416.927(d).

Rather, "the ALJ impermissibly substitute[d] his own judgment for that of a physician." *McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 196 (6th Cir. 2003) (quoting *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (remanding to the SSA for payment of disability benefits)); *Boulis-Gasche v. Comm'r of Social Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011). The *Ferguson* court determined the ALJ set "his own expertise against that of a physician" and failed to secure additional evidence from another physician if he found the existing evidence unsatisfactory. 765 F.2d at 37. *See also Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) (noting that judges and ALJs in social security cases must resist the "temptation to play doctor" (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

The ALJ had the responsibility to develop a complete medical history, and that responsibility includes contacting medical sources or arranging for consultative examinations when the evidence is inadequate to make a determination. 20 C.F.R. § 416.912(d)-(e); *Deskin v. Comm'r of Social Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008). Without acceptable medical evidence, the finding regarding plaintiff's mental function is unsupported and remand is necessary.

## B. The Commissioner Failed to Specify the Weight Given to the Opinion of Treating Physician Dr. Murskyj

The ALJ failed to follow SSA regulations when he did not assign a weight to the opinion of plaintiff's treating physician, Dr. Murskyj.

"An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)). An ALJ is required to evaluate every medical opinion of record, and set forth a basis for rejecting any. 20 C.F.R. § 416.927. The ALJ must give a treating-source opinion "controlling weight" if (1) it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) it "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), *reh'g denied* (May 2, 2013); 20 C.F.R. 416.927; SSR 96-2p. "[A]n opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination . . . , and an opinion from a medical source who regularly treats the claimant . . . is afforded more weight than that from a source who has examined the claimant but

12

does not have an ongoing treatment relationship. . . ." *Id.* at 375-76 (citing 20 C.F.R. § 404.1527(c)(1)-(2)). "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x. 181, 194 (6th Cir. 2009) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

If the ALJ determines that a treating source's medical opinion is not to be given controlling weight, the ALJ must still determine the weight that it should be given. 20 C.F.R. 416.927; SSR 96-2p. And this determination must be based on a number of factors, including, the length, frequency, nature, and extent of the treatment relationship, 20 C.F.R. § 404.1527(c)(2), as well as the "area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). In determining that a treating physician's opinion should be given less than controlling weight, the ALJ must provide "good reasons" for the weight given to that opinion. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

13

the treating source's medical opinion and the reasons for that weight.'" *Id.* (internal citation omitted). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Dr. Murskyj is plainly plaintiff's treating physician: he treated plaintiff first on October 4, 2011 (R. 244), and again on January 16, 2012 (*id.* at 243), and May 8, 2012. (*Id.* at 282-84.) He referred him for neurology treatment between December 2011 and April 2012 (*id.* at 248-54, 256-62) and again in August of 2012 (*id.* at 255), and between November 2012 and May 23, 2013. (*Id.* at 333-39.) The record demonstrates that Dr. Murskyj managed plaintiff's physical care between October 4, 2011 and at least May 23, 2013, as the diagnostic reports from the neurologists referenced above were addressed to him. On May 8, 2012, he provided an RFC questionnaire based on his treatment of plaintiff from October 2011 to May 2012, and in that report he diagnosed cervicogenic headaches,[3] lightheadedness,

---

[3] A cervicogenic headache is a headache caused by a disorder of the cervical spine and its component bony disc and/or soft tissue elements, usually but not invariably accompanied by neck pain. International Headache Society,

14

dizziness, and paresthesia-that is, abnormal nerve sensations. (*Id.* at 246.) He further indicated that plaintiff's medications would lead to drowsiness. (*Id.*) Dr. Murskyj based his diagnosis on a September 2011 CT scan of plaintiff's cervical spine (*id.* at 241-42), a physical examination (*id.* at 243-44), and the neurology examinations and reports from physicians at Michigan Neurology Associates. (*Id.* at 248-62.)

The ALJ acknowledged that Dr. Murskyj diagnosed plaintiff in October 2011 with "cervicogenic headaches," but stated that the record lacked evidence that plaintiff received any further treatment for these headaches. (R. 12.) The ALJ further reasoned that the record did not reflect consistent complaints of headaches to any treatment providers, including a neurologist. (*Id.*) Later on in the decision, the ALJ evaluated Dr. Murskyj's opinion regarding plaintiff's RFC, but did not state what impact the apparent inconsistencies between this treating physician's opinion and the other evidence in the record had on the weight he assigned to Dr. Murskyj's opinion, nor did the ALJ state explicitly what, if any, weight he accorded to it. (*Id.* at 12-13, 17.)

---

International Classification of Headache Disorders, 3rd Edition (ICHD-III), Beta Version. 2013.

15

The ALJ made the following evaluation of Dr. Murskyj's opinion regarding plaintiff's physical restrictions on the amount of weight he could lift, his need for unscheduled work breaks, and the limitation on how long he could sit or stand/walk without rest:

> [T]his opinion is simply not supported by the remaining objective medical evidence, nor by Dr. Murskyj's own routine and conservative treatment of the claimant. In fact, on the same date that this form was completed, Dr. Murskyj's examination of the claimant revealed normal findings and he reported that the claimant only needed to return on an as needed basis or in one year (Exhibit 7F [284]). Dr. Murskyj also failed to report any significant objective findings that would support his conclusions. It appears that Dr. Murskyj relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained throughout this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

(R. 17.) But the neurology examination reports—which were sent to Dr. Murskyj—confirm the diagnosis of myofascial pain syndrome,[4] disc herniations, and a progressive need for increased dosages of pain medications, including Neurontin and Vicodin, and the desirability of trigger-point injection therapy or epidurals. (*See, e.g., Id.* at 248, 254,

---

[4] Myofascial Pain Syndrome is a chronic pain disorder where pressure on sensitive points in your muscles causes pain in seemingly unrelated parts of your body. *Myofascial Pain Syndrome*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/myofascial-pain-syndrome/basics/definition/con-20033195 (last visited April 26, 2016).

16

256.) The ALJ has not explained how this supporting evidence is not consistent with Dr. Murskyj's opinion.

The good-reasons requirement involves a consideration of the factors found in 20 C.F.R. §§ 419.917(c)(2)-(6) to determine the weight given. These factors include the length and nature of the treatment relationship, the nature and extent of the treatment relationship, how well the opinion is supported by medical signs and laboratory findings, the consistency of the opinion with the record as a whole, whether the opinion is provided by a specialist, and how familiar the treating physician is with the SSA's disability programs. 20 C.F.R. §§ 416.917(c)(2)-(6). The ALJ's determination does not address these factors with adequate clarity. The ALJ noted the lack of objective findings to support the conclusions in Dr. Murskyj's RFC questionnaire, and suggested that Dr. Murskyj appeared to have relied on plaintiff's own report of his symptoms and limitations, which he found to lack credibility.

It is apparent that the ALJ did not give Dr. Murskyj's opinion controlling weight, but he did not explicitly state what weight he gave to this opinion. The RFC determination was for "unskilled sedentary

17

work," which involves lifting no more than 10 pounds at a time, and the opportunity to alternate between sitting and standing as needed. (R. 14 (citing 20 C.F.R. § 416.967(a)).) This determination departs significantly from Dr. Murskyj's opinion in one key way. During the hearing, the vocation explained that "[i]f an individual is going to have consistent, unscheduled absences, they could miss one to two days per month but no more than 15 days a year or they would be unable to sustain competitive work." (R. 41.) Since the ALJ found that there were competitive jobs in the economy for which plaintiff had the RFC, he had to have disregarded at least the portion of Dr. Murskyj's opinion that plaintiff would need between three and four unscheduled days off a month. (*See id.* at 247.) This difference may indeed be material for the ultimate determination of whether plaintiff is disabled under the Act, and yet there is no meaningful way to review the Commissioner's decision.

Since the Court is left to speculate regarding what weight this treating physician's opinion was given, the matter must be remanded to the Commissioner. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining

18

precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 544). As the *Wilson* Court explained:

> A court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. "[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Mazaleski v. Treusdell,* 562 F.2d 701, 719 n. 41 [(D.C. Cir. 1977)]; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs,* 102 F.3d 1385, 1390 (5th Cir. 1996). To hold otherwise . . . would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set aside agency action . . . found to be . . . without observance of procedure required by law." Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001).

378 F.3d at 546.

Because the Court cannot discern what weight the ALJ attributed to Dr. Murksyj's opinion, this matter must be remanded to the

19

Commissioner for a determination made in accordance with the regulations of her agency.

## IV. CONCLUSION

For the reasons provided above, the Court adopts the Report and Recommendation and remands this matter for further consideration in accordance with the Magistrate Judge's findings and the findings found herein.

Accordingly, the Court **OVERRULES** the Commissioner's objections and **ADOPTS** the Magistrate Judge's recommendation.

IT IS SO ORDERED.

Dated: May 16, 2016 /s/Judith E. Levy
Ann Arbor, Michigan JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 16, 2016.

/s/Felicia M. Moses
FELICIA M. MOSES
Case Manager